IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-0991-LTB

**ZACHARY MARNER**,

    Plaintiff,

v.

**ANNA LOKSHINA, Probation Officer, ET AL**.,

    Defendants.

## ORDER OF DISMISSAL

    Plaintiff Zachary Marner resides in Wheat Ridge, Colorado.  On May 11, 2015, he initiated this action by filing, *pro se*, a one-hundred plus page long civil rights complaint against various state and county entities and individuals.  On June 5 and June 9, 2015, he filed amended complaints (ECF Nos. 8 & 9) against various entities and individuals.  The Court granted leave to proceed pursuant to 28 U.S.C. § 1915 on June 12, 2015 (ECF No. 12).  On June 15, 2015, this Court issued a six-page Order directing Plaintiff to file an Amended Complaint (ECF No. 14).  That Order provided specific guidance on the deficiencies in the Amended Complaint.  On July 15, 2015, Mr. Marner filed another Amended Complaint (ECF No. 17) against twenty-two various governmental employees concerning allegations that encompass the time period from 2007 through 2015.  Mr. Marner further has added his two minor children as Plaintiffs and seeks monetary damages.  Plaintiff asserts seven claims in his Complaint:  Claim One-First Amendment violations; Claim Two-Fourth Amendment violations; Claim Three-Sixth Amendment violations concerning his criminal conviction; Claim Four-Fourteenth Amendment violations; Claim Five-Violations of the Fair Credit Reporting Act; Claim Six-Defamation of Character; and Claim Seven-Conspiracy to deprive Plaintiff of his constitutional rights.

## A. Applicable Legal Principles

Pertinent to the case at bar is the authority granted to federal courts for *sua sponte* screening and dismissal of certain claims. In this regard, Title 28 of the United States Code, section 1915, establishes the criteria for allowing an action to proceed *in forma pauperis* (IFP), *i.e.*, without prepayment of costs. Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons that are proceeding *in forma pauperis* and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

In addition, Congress enacted a new statutory provision at 28 U.S.C. § 1915A, entitled "Screening," which requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the court must dismiss the complaint. 28 U.S.C. § 1915A(b).

Plaintiff has been granted leave to proceed IFP in this action (ECF No. 12). Moreover, his Complaint asserts claims against officers and employees of governmental agencies. Thus, his Complaint must be reviewed under the authority set forth above.

In reviewing complaints under these statutory provisions, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007) (rejecting the traditional standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by the exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those

2

uncontradicted factual allegations of the complaint, are the "factual allegations ... enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]"  *Bell Atlantic Corp.*, 550 U.S. at 555.

The Tenth Circuit Court of Appeals has held "that plausibility refers to the scope of the allegations in a complaint:  if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal citations and quotations omitted).  The Circuit court has further noted that the nature and specificity of the allegations required to state a plausible claim will vary based on context. *Id*.  The Court thus concluded that the applicable standard is "a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Id*.

A legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim.  *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).  *See also Conkleton v. Raemisch*, 603 F. App'x 713 (10th Cir. 2015); *Ross v. Romero*, 191 F. App'x 682 (10th Cir. 2006) (affirming district court's *sua sponte* dismissal of civil rights complaint under 28 U.S.C. § 1915(b)).

The Court must construe the pleadings liberally because Plaintiff is a *pro se* litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  If a complaint reasonably can be read "to state a valid claim on which the plaintiff could prevail, [a court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110.  However, a court should not

act as a *pro se* litigant's advocate. *See id*. *Sua sponte* dismissal is proper when it is patently obvious that plaintiff could not prevail on the facts alleged and allowing him an opportunity to amend his complaint would be futile. *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (internal quotations omitted).

For the reasons stated below, the Complaint and the action will be dismissed pursuant to the screening authority set forth above. The pertinent grounds which will result in the dismissal are addressed below.

### B. Liability under 42 U.S.C. § 1983

With the exception of his Fifth Claim, Plaintiff seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327, 330–331 (1986). In addressing a claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 393–394 (1989) (internal quotations and citations omitted). The validity of the claim then must be judged by reference to the specific constitutional standard which governs that right. *Id*. The elements necessary to establish a § 1983 vary with the constitutional provision at issue. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (internal citations omitted). But common to all § 1983 claims is the requirement that liability be predicated on a violation traceable to a defendant-official's "own individual actions." *Id*. *See also Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (noting that "personal participation is an essential allegation in a § 1983 claim"); *Brush v. Burgess*, 177 F. App'x 805,

807 (10th Cir. 2006) (concluding that a sheriff's supervisory responsibility for a jail is insufficient to establish deliberate indifference absent personal participation).

As relevant here, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Board of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 403 (1997). Personal involvement, however, does not mean direct participation is necessary. A government official can be held liable in a § 1983 suit for a constitutional violation under a theory of supervisory liability but only if the plaintiff shows: 1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that; 2) caused the complained of constitutional harm; and 3) acted with the state of mind required to establish the alleged constitutional deprivation. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

Here, Plaintiff has included among the Defendants Governor John Hickenlooper, Police Chiefs Terry Jones, Daniel Oates and Robert White, Mayor Michael Hancock, Penny May, the Director of Human Services, and Attorney General Cynthia Coffman. He fails, however, to allege any personal participation by any of these individuals. Nor does he provide any bases upon which to assert supervisory liability against any of these individuals. Accordingly, his claims against them will be dismissed.

Moreover, even if a viable constitutional claim exists, a number of legal doctrines may preclude recovery for those violations, including statutes of limitations, immunity, preclusion, *etc*. These doctrines are discussed below.

### C.  Statute of Limitations

Plaintiff initiated this action on May 11, 2015. The applicable statute of limitations for a § 1983 claim in Colorado is two years. *See Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993). *Cf. Nicholas v. Boyd*, 317 F. App'x 773, 777 (10th Cir. 2009) (holding that, in Colorado,

the applicable statute of limitations for § 1983 actions, even those asserted against enforcement officers, is the two-year limitation period of § 13–80–102(1)(g)) (internal citations omitted). The statute of limitations begins to run when a claim accrues. Under federal law, a § 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Kripp v. Luton*, 466 F.3d 1171, 1175 (10th Cir. 2006) (internal quotation marks omitted).

Although the statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), the court may dismiss a claim *sua sponte* on the basis of an affirmative defense if the defense is "obvious from the face of the complaint" and "[n]o further factual record [is] required to be developed in order for the court to assess the [plaintiff's] chances of success." *Yellen v. Cooper*, 828 F.2d 1471, 1476 (10th Cir. 1987); *see also Fratus v. DeLand*, 49 F.3d 673, 676 (10th Cir. 1995) (stating that dismissal under § 1915 on the basis of an affirmative defense is permitted "when the claim's factual backdrop clearly beckons the defense").

In order to recover under 42 U.S.C. § 1983, the factual bases for Plaintiff's claims must have occurred on or after May 11, 2013. Although Plaintiff was advised that he could recover for only those claims that occurred on or after May 11, 2013, he continued to raise such claims in his Amended Complaint. He cites no authority to show that any of these claims are subject to any tolling provisions. Accordingly, any claims that occurred prior to May 11, 2013 will be dismissed.

## E. Immunity

Section 1983 provides a cause of action against state actors who violate an individual's rights under federal law. 42 U.S.C. § 1983. Notwithstanding, § 1983 was not meant "to abolish wholesale all common-law immunities. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Instead, the Act is to be read "in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Imbler v. Pachtman*, 424 U.S. 409, 418. Thus, for some "special

functions," *Butz v. Economou*, 438 U.S. 478, 508 (1978), it is " 'better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.' " *Imbler*, 424 U.S. at 428 (quotation omitted).

The common law protections afford either absolute or qualified immunity to individuals sued under § 1983. *Filarky v. Delia*, 132 S.Ct. 1657 (2012). Absolute immunity from suit prevents damages recoveries from judges, prosecutors, and other persons acting under color of law who perform official functions integral to the judicial, executive or legislative process. *See, e.g.*, *Stump v. Sparkman*, 435 U.S. 349 (1978) (judges); *Imbler v. Pachtman*, 424 U.S. 409 (1976) (prosecutor); *Briscoe v. LaHue,* 460 U.S. 325 (1983) (police officer witness); *Butz v. Economou*, 438 U.S. 478 (1978) (federal agency hearing examiners and officials responsible for initiating and prosecuting enforcement actions); *Wilhelm v. Continental Title Co.*, 720 F.2d 1173, 1177–78 (10th Cir. 1983) (1984) (director of civil rights agency); *Johnston v. Herschler*, 669 F.2d 617, 620 (10th Cir. 1982) (governor); *Tripati v. U.S.I.N.S.*, 784 F.2d 345, 348 (10th Cir. 1986) (probation officers for activities that are intimately associated with the judicial phase of the criminal process such as preparation of a pretrial sentence report); *Valdez v. City & Cnty. of Denver*, 878 F.2d 1285, 1286 (10th Cir. 1989) (officials charged with executing facially valid court orders).

Moreover, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Plaintiff's Amended Complaint contains allegations against, *inter alia*, probation officers Anna Lokshina, Kim Carazza, David Gill, and Fran Jamison. The State probation officers are cloaked with absolute judicial immunity when performing judicially related functions. *United*

*States v. Davis*, 151 F.3d 1304 (10th Cir. 1998). A probation officer serves as an investigative and supervisory arm of the court and is responsible to serve as liaison between the court, which has supervisory power over the defendant's term of supervised release, and the probationer, who must comply with the conditions of his supervised release or run the risk of revocation. *Id.* at 1307. Further, the probation officers' recommendations are just that, *i.e.*, recommendations. It remains the duty of the sentencing court to impose punishment and determine if and when revocation of a probationary sentence is appropriate and to impose an appropriate sentence after revocation.

Plaintiffs claims against the probation officers concern actions that are integrally related to their judicial function in supervising probationers. As such, they are entitled to absolute immunity in this action. *Accord Snell v. Tunnell*, 920 F.2d 673, 692 (10th Cir. 1990) (absolute immunity granted to officers who allegedly made false statements in a pretrial bond report and a presentence report as such functions of the probation officer are integrally related to the judicial function).

The same is true for Judge Robert Hyatt and Hearing Officer Rebecca Hoffman as the acts complained of were taken within their duties as judicial officers. Accordingly, these Defendants will be dismissed.

### D. Claims That Occurred on or after May 11, 2013

**1.      Claim One**

In Claim One, Plaintiff asserts alleged violations of his rights as provided by the First Amendment of the Constitution. The only facts alleged by Plaintiff that occurred on or after May 11, 2013 assert that an Aurora police officer threatened him that if he did not shut up, the officer would put him under arrest (ECF No. 17, p. 17, ¶ 6).

Mere verbal threats or harassment do not rise to the level of a constitutional violation

unless they create "terror of instant and unexpected death." *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992). Here, the officers' comments, although inappropriate, do not suggest a show of deadly force, thus failing to create "terror of instant and unexpected death." As such, they fail to allege a constitutional violation and this claim will be dismissed. *Accord French v. Colorado,* 357 F. App'x 200 (10th Cir. 2009); *Crownhart v. Sullivan,* 347 F. App'x 412, 413 (10th Cir. 2009); *Alvarez v. Gonzales,* 155 F. App'x 393, 396 (10th Cir. 2005); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (holding, in case where sheriff laughed at inmate and threatened to hang him after inmate sought to mail legal correspondence, that "[v]erbal harassment or abuse of the sort alleged in this case is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983"). Accordingly, this claim will be dismissed.

**2.     Claim Two**

In his second, claim, Plaintiff asserts violations of the Fourth Amendment concerning a search of a vehicle where he was a passenger and the seizure of his parent's car from the side of the road. Fourth Amendment rights are personal, and, therefore, a defendant cannot claim a violation of his Fourth Amendment rights based only an illegal search and seizure of a third person's property. *See Illinois v. Andreas*, 463 U.S. 765, 771 (1983) ("If the inspection by police does not intrude upon a legitimate expectation of privacy, there is no 'search'...."); *United States v. Mosley*, 743 F.3d 1317, 1322 (10th Cir. 2014) (internal quotation marks omitted). In other words, the capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection has a legitimate expectation of privacy in the invaded place. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). Thus, a person seeking to suppress evidence produced as the result of a vehicle search challenge must establish that he has a possessory or property interest in the vehicle searched.

Here, Plaintiff's allegations concern a friend's vehicle and his parent's vehicle (ECF No.

17, p. 18-19). Because Plaintiff did not have a possessory interest in either of these cars, he did not have any legitimate expectation of privacy that could give rise to any Fourth Amendment violations. As such, these claims will be dismissed. *Cf. United States v. Oceguedo*, 605 F.3d 719 (10th Cir. 2015).

**3.      Claim Three**

In Claim Three, Plaintiff asserts Sixth Amendment violations concerning his criminal conviction. These claims are barred by the rule in *Heck v. Humphrey*, 512 U.S. 477 (1994). Pursuant to *Heck*, if a judgment for damages necessarily would imply the invalidity of a criminal conviction or sentence, the action does not arise until the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by the issuance of a federal habeas writ. *See Heck*, 512 U.S. at 486-87.

It is apparent that Plaintiff has not invalidated the conviction and sentence at issue and a judgment in Claim Three necessarily would imply the invalidity of Plaintiff's criminal conviction or sentence. The Court, therefore, finds that Plaintiff's claims for damages challenging the validity of his state court conviction are barred by the rule in *Heck*. Therefore, Claim Two will be dismissed pursuant to *Heck*. Although this claim will be dismissed without prejudice, *see Fottler v. United States*, 73 F.3d 1064, 1065 (10th Cir. 1996), it will be dismissed for failure to state a claim, *see Hafed v. Fed. Bureau of Prisons, et al.*, 635 F.3d 1172 (10th Cir. 2010) (citing *Davis v. Kan. Dep't of Corr.*, 507 F.3d 1246, 1248-49 (10th Cir. 2007)).

**4.      Claim Four**

In his Fourth Claim, Plaintiff's allegations concerning violations of the Fourteenth Amendment for the time period of from May 11, 2013 through May 11, 2015 include the following.

> A. On July 21, 2013, City of Aurora police failed to issue a ticket to Justin Flowers for $715.00 worth of property damage (ECF No. 17, p. 20, ¶ 1).
>
> B. Unequal applications of the law when William Hale Wilbur Richmond and Rashaun "Congo" Thompson were cut loose off probation but Plaintiff was hit with a bogus charge on June 16, 2014 by the Aurora Police (ECF No. 17, p. 22, ¶ 9).
>
> C. Plaintiff was denied meritorious unemployment claims (ECF No. 17, p. 23, ¶¶ 12-14).
>
> D. Probation Officers Kim Corazza Anna Lokshina, Michael Vallejos and Fran Jamison sent inaccurate information on their background check releases by sending a debt to collections for fees for supervision, which Plaintiff describes as defamation, slander and libel (ECF No. 17, p. 24, ¶¶6, 18).

Plaintiff premises liability for these claims on the Fourteenth Amendment, which provides as follows.

> Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Const. Amend. 14.

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," *see, e.g., Vitek v. Jones*, 445 U.S. 480, 493-494 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution), or it may arise from an expectation or interest created by state laws or policies, *see, e.g., Wolff v. McDonnell*, 418 U.S. 539, 556-558 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits).

With respect to his first subclaim, failure to investigate an alleged crime, there is no

11

constitutional right to have law enforcement officials investigate a reported crime. *See e.g.*, *Parkhurst v. Tabor*, 569 F.3d 861, 866 (8th Cir. 2009); *Sheets v. Mullins*, 287 F.3d 581 (6th Cir. 2002); *Doe v. Mayor and City of Council of Pocomoke City*, 745 F.Supp. 1137, 1139 (D. Md. 1990) ("The Court is not aware of a constitutional, statutory, or common law right that a private citizen has to require a public official to investigate or prosecute a crime."). "The Due Process Clause of the Fourteenth Amendment does not impose upon the state an affirmative duty to protect its citizens [against illegal private acts], but rather, places limitations on affirmative state action that denies life, liberty, or property without due process of law." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1065 (6th Cir. 1998) (citing *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195 (1989)).

[F]ederal courts are not entrusted with the responsibility of ensuring the effective enforcement of state criminal laws; that role falls to state and local law enforcement authorities. It is the duty of executive officials—not the courts—to take care that the criminal laws are faithfully executed." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1205 (10th Cir. 2004) (citing U.S. Const., art. II, § 3; *Morrison v. Olson*, 487 U.S. 654, 690 (1988)); *see also Slagel v. Shell Oil Refinery*, 811 F. Supp. 378, 382 (C.D. Ill. 1993)(police officer had no constitutional duty to conduct investigation of plaintiff's assault charge), *aff'd,* 23 F.3d 410 (7th Cir. 1994). In short, "the law is clear that a private citizen has no constitutional, statutory, or common law right to require a public official to investigate or prosecute a crime." *Woods v. Miamisburg City Schools*, 254 F.Supp.2d 868, 873 (S.D. Ohio 2003) (citations omitted). Accordingly, this claim will be dismissed.

In his second subclaim, Plaintiff alleges the unequal application of the law. The Equal Protection Clause provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.A. To state a claim under the Equal

Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated

against the plaintiff because of membership in a protected class. *Washington v. Davis*, 426 U.S.

229, 247–48 (1976).  To prevail on an equal protection claim, a plaintiff must show that he was

treated differently from others who were similarly situated. *City of Cleburne v. Cleburne Living*

*Ctr.*, 473 U.S. 432, 439–40 (1985); *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 532 (10th

Cir. 1998).  "The Equal Protection Clause does not forbid classifications.  It simply keeps

governmental decisionmakers from treating differently persons who are in all relevant respects

alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (emphasis added).  When the plaintiff is not a

member of a protected class and does not assert a fundamental right, the Court must determine

only whether government classifications have a rational basis. *See Stephens v. Thomas*, 19 F.3d

498, 501 (10th Cir.), *cert. denied*, 513 U.S. 1002 (1994).

In this case, Plaintiff provides no explanation for this claim and no factual support.  He

does not claim that he has been treated differently than another who is similarly situated.  He

simply complains that other people were released from probation when he was not.  Plaintiff's

conclusory allegation establishes no factual basis for such a claim. *See Brown v. Zavaras*, 63

F.3d 967, 972 (10th Cir. 1995).  Plaintiff does not allege that the actions regarding the decision to

charge him on June 14, 2014 were directed at him due to a protected classification, that any

fundamental right was implicated, or that the charges were not rationally related to a legitimate

government interest, let alone that the charges did not substantially further any compelling

governmental interests, *City of Cleburne*, 473 U.S. at 440, as required under a strict scrutiny

analysis.  He simply uses the term "equal protection."

A *pro se* plaintiff's complaint must be broadly construed. *Erickson v. Pardus*, 551 U.S.

89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Notwithstanding, the generous

construction to be given the *pro se* litigant's allegations "does not relieve the plaintiff of the

burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  A reviewing court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (quotations and citations omitted)). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).  Therefore, this claim shall be dismissed from this action without prejudice for failure to state a claim upon which relief may be granted.

In his third subclaim, Plaintiff complains that he was denied meritorious unemployment claims.  He has named as Defendants the Director of the Colorado Department of Labor and Employment and hearing and appellate officers who presided over his unemployment compensation proceedings.  This Court is precluded from reviewing such claims under the *Rooker-Feldman* doctrine.

Pursuant to Fed. R. Civ. P. 12(h)(3), the Court must dismiss an action if the Court lacks subject matter jurisdiction.  The issue of subject matter jurisdiction may be raised *sua sponte* by the Court at any time during the course of the proceedings.  *See McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988).  "The party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the court's jurisdiction." *United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994).

The *Rooker–Feldman* doctrine provides that federal courts, other than the United States Supreme Court, lack jurisdiction to adjudicate claims seeking review of state court judgments.

*See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *see also Freeman v. Brock*, 33 F. App'x 958, 961 (10th Cir. 2002) (applying *Rooker/Feldman* doctrine to an appeal of a state commission's denial of unemployment compensation).  The *Rooker–Feldman* doctrine precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994) (stating that the losing party in a state court proceeding is generally "barred from seeking what in substance would be appellate review of the state court judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights").  Review of the state court judgment must proceed to the state's highest court and then to the United States Supreme Court pursuant to 28 U.S.C. § 1257.  *See Facio v. Jones*, 929 F.2d 541, 543 (10th Cir. 1991).

Plaintiff challenges the State's decision to deny him benefits.  The denial of unemployment compensation was the deprivation ordered by the State. The Amended Complaint challenges the actions of Defendants that participated in the unemployment compensation proceedings.  The Amended Complaint is a direct attack on the state court's judgment because an element of the Complaint is that the judgment was wrongful.  Review of the claims would require the Court to review the state court decisions that dealt with the denial.  Therefore, the Court finds that the Complaint must be dismissed for lack of subject matter jurisdiction pursuant to the *Rooker–Feldman* doctrine.

In his fourth subclaim, Plaintiff alleges that various probation officers sent inaccurate information on their background check releases by sending a debt to collections for fees for supervision, which Plaintiff describes as defamation, slander and libel.  As an initial matter, the

discussion above reveals that the probation officers are entitled to absolute immunity for their actions in this regard. Moreover, claims of defamation, slander and libel are not actionable in a § 1983 claim. *Siegert v. Gilley*, 500 U.S. 226, 233 (1991); *Angel v. Torrance County Sheriff's Dept.,* 183 F. App'x 707 (10th Cir. 2006). Accordingly, these claims will be dismissed.

**5.    Claim Five**

In his Fifth Claim, Plaintiff claims violations of the Fair Credit Reporting Act (FCRA). The FCRA imposes a duty on persons who provide information to credit reporting agencies ("furnishers") to accurately report information. 15 U.S.C. § 1681s–2(a). While it also gives consumers a private right of action against those who violate its provisions, *see* 15 U.S.C. § 1681n (right of action against willful violators); 15 U.S.C. § 1681o (right of action against negligent violators), that right of action is limited to claims against the credit reporting agency; it does not extend to furnishers to agencies. *Sanders v. Mountain America Federal Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012). Accordingly, this claim will be dismissed.

**6.    Claim Six**

In his Sixth Claim, Plaintiff alleges that the Aurora Police, Denver Police, Denver District Attorney, and Google all acted in conjunction with one another and defamed the Plaintiffs character for about nine (9) years through their posting of an article that lacked integrity, validity, or merit. In *Paul v. Davis*, 424 U.S. 693 (1976), the United States Supreme Court held that Davis' s 1983 action for damages against police chiefs who had distributed a "flyer" to area merchants which contained his name and photograph and identified him as an "Active Shoplifter" did not state an actionable claim under § 1983 because injury to reputation is not a deprivation of a protected property or liberty right. Thus, while Plaintiff may initiate a state court tort claim based on violations of state law, there is no constitutional violation here. *Accord McCarty v. City of Bartlesville,* 8 F. App'x 867, 875 (10th Cir. 2001); *Lancaster v.*

Case 1:15-cv-00991-LTB   Document 22   Filed 08/13/15   USDC Colorado   Page 17 of 18

*Independent Sch. Dist. No. 5*, 149 F.3d 1228, 1235 (10th Cir. 1998) ("While the injury to reputation asserted by the plaintiff may be actionable under state tort law, it falls far short of a constitutional violation.") (footnote omitted).  Thus, this claim must be dismissed as well.

**7.     Claim Seven**

In his final Claim, Plaintiff makes a broad allegation of conspiracy but merely reiterates his previous claims.  Mr. Marner has failed to allege facts sufficient to suggest the existence of any of the elements of a conspiracy.  *See Bivens Gardens Office Bldg. v. Barnett Banks, Inc.*, 140 F.3d 898, 912 (11th Cir. 1998) (to state a claim for civil conspiracy, a plaintiff must allege "an agreement between two or more people to achieve an illegal objective, an overt act in furtherance of that illegal objective, and a resulting injury to the plaintiff").  Although claims of civil conspiracy need not be pleaded with particularity, a plaintiff must indicate the parties involved, the general purpose of the conspiracy, and the approximate date, so that a defendant is put on notice of the claims against him.  *Hoskins v. Poelstra*, 320 F .3d 761, 764 (7th Cir. 2003).  Mr. Marner's allegations fail to state a claim for conspiracy.  *Accord Custard v. Young*, Civil No. 06-01114, 2008 WL 791954, 9 (D. Colo. Mar 20, 2008). Accordingly, this claim also must be dismissed.

Thus, accepting Plaintiff's allegations as true, he fails to state a claim upon which releif may be granted.  Accordingly, it is

**ORDERED** that the Complaint and this action are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and/or 28 U.S.C. § 1915A.  It is

**FURTHER ORDERED** that leave to proceed *in forma pauperis* on appeal is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Plaintiff files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in*


*forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED at Denver, Colorado, this   13th   day of August, 2015.

BY THE COURT:


  s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court